Thank you, Your Honor. May it please the Court, my name is Larry Gent from Bozeman, Montana. I represent Mrs. Morse, and I'd like to go to the sufficiency argument before I address the Two-Fourth Amendment. I should mention to you that the clerk put it down for 20 minutes just because there are a lot of points raised on appeal, but if you're done and we're done before then, don't feel bad. Everything is preserved because it's in the briefs, and we don't consult beforehand, but I don't know that it's any harder than other difficult and interesting cases we've had today. Thank you, Your Honor. The problem with Count 6, which we made a Rule 29 motion on, there's two problems. The first is the obvious one. It results in they bust this guy, Mark Butler. They literally tackle him during a bust, interrogate him, and he says, I got my dope from Lucy Morse. And when did that happen? April 2, 2004. The indictment, the tab A of your appendix, charges Lucy Morse with possessing methamphetamine with the intent to sell on April 23. Or aiding and abetting. Or aiding and abetting, but the trouble is the crime was already complete, done, cooked, and et on April 2 when those agents tackled Mark Butler and seized the dope. She couldn't have done it on April 23. That was three weeks later. But I thought he testified that she had been his sole source of supply about the period of time that he was distributing methamphetamine. He did testify to that, but Judge, he is in custody April 2. Three weeks later, she could not have aided and abetted him. Because he's in the jail, and he remained there. I have to say I missed that subtle point. I didn't see that in your brief. It's in the brief. Did I just skew you through that portion? It's in the brief, and the indictment charges April 23 and charges she aided and abetted on that date. To help clear it up, where do you suppose the April 23 date comes from? I have no idea. And we didn't hear any proof about that, which is why I made the Rule 29 motion. I don't understand this either. She's convicted of aiding and abetting a drug transaction with a man who was in jail, already having been caught for the drug transaction weeks before? Yes, Your Honor. Now I understand. The other part of that argument of sufficiency is... Okay, let me just get the date right. He was arrested on the 2nd of April, 2004, and the Count Six charged April 23, 2004. Yes, sir. All right. And the other part of that argument, as far as substantive law... Where was he in jail at that time? Yellowstone County, which is right there in Billings. Right across the street. Just across the street. That's right. All right. Well, that's where Count Five alleges this took place, in Yellowstone County. Let me look at your excerpt. The indictment's in the excerpt. Go ahead. I don't want to detain you. Go ahead. And the other part of my argument on that is simply this. As a general principle, if you have the seller aiding and abetting the buyer without doing more, every seller would be aiding and abetting. We don't do that with conspiracy cases in this circuit. I think that's true. I thought about that myself. But in other words, I think they could have charged Morris with sales on that day. They could have charged him with sale on April 2nd, not on April 23rd. Right. So, you know, every time, I suppose, a dealer sells drugs to someone else, that dealer is aiding that person in possession, right? That's the theory. In effect, it's the same offense almost as sales. So if the person were convicted of both, it would be like a double jeopardy argument, almost. Double punishment. So you choose one or the other. So, you know, I don't think that makes any difference here. Because I look to see whether she was charged with a sale on that day. And the answer is no. No, she's not. She could have been. Mr. Judge, let me ask you. Judge Tashima mentioned whether it makes any difference for sentencing purposes. Does it, given the fact that she got the 20-year mandatory minimum, does it make any difference what she was punished for on this count? It doesn't unless it depends on what happens with the rest of the case, which I hope we might go to. She got a concurrent sentence on this. She got a concurrent sentence. She got the mandatory minimum, which was 20 years. Which was 20 years. Because of her prior conviction. Because of the prior. Okay. And I'd like to address now counts 3, 4, and 5. Remember, she's acquitted on counts 1 and 2, which are the two supposed controlled buys. And the one question the court should ask on the affidavit, the key question, is where's Lucy? I mean, her name's mentioned, but they claim they have continual surveillance, but nobody sees her. Nobody hears her voice. She's mentioned, and that's it. And the person she's mentioned by is a person whose veracity is averred to by no one, in or out of law enforcement, in the affidavit. And that's why I think you should toss counts 3, 4, and 5. The jury, you know, acquitted her on those two counts, because during the two controlled buys, no Lucy. They mention her. Well, she's mentioned as the source, right? We're getting it from Lucy. We're going to Lucy's house. We're going to meet. So you're saying that if she's mentioned that the Lucy is Lucy Moores, why under Jackson is that not sufficient for Rule 29? Because, once again, on those two counts, she won at trial. So we're not talking about Rule 29. We're talking about in the search warrant, in the application. And in the application, there has to be some basis for crediting the hearsay where Lucy is mentioned as the source. That's the first part. I don't see the difficulty with that. The standard of proof at trial is beyond a reasonable doubt. The standard of proof for a search warrant affidavit is much lower. So even if it's something that a person was acquitted of, I don't see why it couldn't be good enough for a search warrant. That's a good question, Judge, and I think the answer is support. The Supreme Court has said it's good enough for sentencing. But as provided in some of the Fourth Amendment law, the quote from Justice White's concurring opinion in Spinelli, where do the officer's information is hearsay? No warrant should be issued absent good cause for crediting that hearsay. Where is the good cause for crediting the hearsay? Weren't they established to be reliable informants? No. They had provided previous, you know, good information? No, sir. No, sir. The CI is established as a reliable informant. This is not that CI? No, no. The CI has never seen Lucy. Vossler, this Vossler person that they're buying from, remember they don't set up a buy with Lucy, they set up a buy with Vossler. And Vossler is the only person to mention Lucy as the source. And we don't know a blessed thing in this affidavit about Vossler. We don't. Except, I mean, you're confusing principles of admissibility of evidence at trial with admittedly hearsay statements by a co-conspirator, which may not be hearsay and they may come in under 801-D, whatever it is. No, sir. It's still hearsay in the affidavit, whether it's subject to some evidence. It's a statement in furtherance of the conspiracy. And if Vossler is saying, I'm going to Lucy as my source of supply, and she's saying it to the CI, why can't the magistrate judge rely on that statement as a statement made in furtherance of the conspiracy? Because we have no way to credit that hearsay whatsoever. We don't know that Vossler is reliable. By credit, you mean to know whether it's reliable. To have something to know what the basis is. There has to be some basis. It's a year after the transaction is consummated, and lo and behold, Vossler ends up selling controlled substances to the CI. Right. There's no dispute that Vossler sells to the CI. But there's no basis whatsoever. Vossler never says, I bought dope from Lucy. Well, what about all those statements about Lucy, Lucy? She never says that. She mentions Lucy. She says, I can buy directly from Lucy. Right. At one point, Vossler introduces her and basically says, you can now deal directly with Lucy. Vossler never says on that occasion, and this is important, Judge, that she even saw Lucy. She's dealing with these other people that are driving all around Billings trying to find some dope from somebody. The first one she buys from Wasted Willie, Dale Weisher. It's conceded even by the state that Lucy wasn't there, by the government. Aren't you really arguing that we should invalidate the search warrant on the basis that the affidavit as a matter of law doesn't establish probable cause? Yes. Okay. But you're doing it, I think, as Judge Kleinfeld points out, by urging principles of liability under a trial standard of an unreasonable doubt. No, because the quote I gave you on the hearsay is directly from Spinelli, from the concurring opinion in Spinelli. And that's what we have to look at the totality of the affidavit. And the affidavit clearly establishes that there are controlled substances being distributed. And Lucy's name comes up, I think I made four or five different notations when I went through the affidavit that tie back to Lucy. Why can't the issuing magistrate make a reasonable inference that it's Lucy Morris who is the source of supply? Because the references made in this affidavit do not amount to the substantial basis for tying those statements to Lucy. But it's more than just the statements of the CI. It's the physical surveillance. It's the association with all these other known drug dealers. The magistrate judge has to look at all of that in determining whether or not there's probable cause to believe that she is the source of supply for all these drugs. And the physical surveillance judge reveals nothing. Well, I mean, they know that, for example, that she's living with this fellow who is a known drug dealer. I mean, why can't the magistrate consider that? No, I'm sorry, Judge, the affidavit doesn't say that. In nowhere in this affidavit does it say that she's living with a known drug dealer. Now, that she's living with George Morris. Right. And doesn't George have a prior? No. No, George Morris is the live-in boyfriend. George Morse is Lucy's nephew who is a known drug dealer who most emphatically does not live in the trailer. And so as far as the associations and as far as the physical observations, in this particular case, your Honor is absolutely right saying those can come in, but in this case they don't show anything, leading to Judge Kleinfeld's hypothesis. Yet that really is what I'm arguing, that there isn't probable cause, there isn't a substantial basis from the substance of this affidavit to show that there's probable cause. I'm having trouble reading the affidavit, actually, because the Xeroxing is real bad. And I apologize for that. And we sent another one over in hopes, and I have some copies for all of us right there. You have clear copies. I'd love to have a clear copy. It's just physically difficult to read the affidavit. I don't know why the government didn't provide one that was legible, and I don't know what the cause of unreadability is. I may be able, actually, I think I have three extra copies over at the hotel. I didn't bring all my stuff, obviously. If you could lodge those with the clerk. Maybe give them to the clerk. Yes, I'd be glad to do that. The other issues that I have, if I may go on to the Franks issue, here's what's going on on the Franks issue. They supposedly stopped Lucy on a dark and stormy night, and for allegedly throwing something out of the car, when she just happens to be in front of one of the people. You know, the whole case is about the Banditos, this motorcycle. She's alleged to be one of the primary sources of the Banditos. She's alleged to be their source, and they're after her. And so just coincidentally, on a dark and stormy night, she gets stopped, and she goes, and there's something on the outside of the car, and they claim in the affidavit they test it. And it's interesting that the officer also claims in his affidavit he keeps up with the Supreme Court decisions, and that's important because in State v. Tackett, which is in my brief, it didn't make the index of cases, but it's in my brief, that's the case after 2003 in Montana. The state officers had to have a particularized suspicion to do a dog hit. So they had to have something to do the dog hit. They can't just stop and say, yeah, we got Lucy. Let's do the dog and see if there's something in the car. And so there's supposedly a field test, and we go have the hearing. So we have three officers that are mentioned in the affidavit. One of them is the dog guy. One of them is the guy that does the stop. And the third is the guy that does the affidavit, Gary Cedar. So you got your Frank's hearing. That was the evidentiary hearing, correct? Right. We had a Frank's hearing, and I will concede the judge gave me a hearing, but what came out of the hearing was that this Corb, the guy that stopped the car, doesn't know how to do the field test. And Cedar tells me he didn't do the test. He's the affiant. And we also have this conceded by everybody, this goes back to the lab, the sensitive lab where they do the sensitive test, and it's not methamphetamine. Now, anybody that's any kind of a lawyer is going to get the discovery and say, what's going on here? Let's go have a hearing. And so they do a dog hit, and a positive dog hit allows them to get a search warrant on the car, and they find all kinds of paraphernalia, contraband in the car, which forms the basis of counts 7, 8, 9, and 10. But even if you're right on the two field test kits, let's assume, let's throw those out, exclude them. You've got the white powder, the suspicious area in which the stop occurred near the known drug dealers, the banditos, and you've got the dog hit. As a matter of federal law, that's good enough, is it not? As a matter of federal law, I don't agree, excuse me, I don't agree, Judge, with being around the suspicious person, being in the area. I don't think that's, I think that's very... You told us she was stopped in the middle of the road right by the residence of one of these... Right, right. That's not in the affidavit, though. Oh, okay. That came out at the hearing. Okay. As a matter of federal law, the dog hit's good enough, but you don't get there, because under Montana law, you can't do that. But that's telling a federal court that because it might not make it under Montana law, it can't make it under federal law, and that's not the law. No, it's not the law. I understand the silver platter doctrine and the demise of it in Elkins and all that. I don't think so. We just are not bound by Montana law with respect to our brethren in Montana. But the point is, is this officer is, and because this officer knows... It doesn't invalidate the war. The federal war, that's what I mean. But this officer, objectively, in his mind, knows that he's got to have something other than... Well, at that point, the officer apparently testified that he thought that the two field test kit results were positive. He didn't know until weeks later, when the lab report comes back, that it isn't so. So, again, I don't understand. I don't think you've answered my question. If we excise the results of the field hit, why isn't there still sufficient probable cause to arrest Lucy, based on the dog hit and the white powder on the window? Simply because the dog hit never would have happened in the real world. Well, in the real world... The dog hit never would have happened if the policeman had followed Montana law. Yes. But all that matters for a federal case is whether it would never have happened if he had followed federal constitutional law. That's right. I concede that point because I've read that case law and I understand it. Okay. The concluding argument I would make on the Franks issue is simply this, that going to the rest of my brief about the things that were omitted, on omissions, the omissions of the fact they didn't tell the judge, the issue in Magistrate, there are two big dogs in the car when they brought the dog up for the dog hit. But I thought the handler testified at the hearing that that doesn't make any difference, that the dog's not going to be diverted by the presence of other dogs. The dog's more interested in the drugs than he is in other dogs. Isn't that what the handler testified? That's what he testified to, but the point is that the judge should have known about some of these things, the issue in Magistrate, and the reason is for the whole Franks v. Delaware line of cases. But that's not the fault. It wouldn't have made any difference if the unrefuted testimony is. It's not material. Right. Yeah. Okay. So who cares? I'd like to go on to my other issue because I have one minute left, and I probably will use it. The court decided Norberry after I wrote the brief on Section 851. However, I went back, in addition to reading Norberry, I got the briefs in Norberry, or the brief of the defendant. The defendant in Norberry never contested the fact about state versus federal law applying to the convictions, and we argued that. The conviction should be final under state law. The defendant in Norberry conceded that point, and the panel in Norberry then decided that the conviction under 841B should be decided under federal versus state law. Similar to Dickinson. Yes, similar to Dickinson. Right. And I point out only to the court that the defendant didn't argue the same thing. It really wasn't the same question presented, even though they ended up with that result. I certainly would have. That's why we decided it, because that was an issue before the panel. That's why we published that, to make it clear that federal law determines the effect of the prior state conviction. Right. And that is different from at least two circuits, from the Eighth and the Tenth Circuit. And we knew that when we published Norberry. I'm sure you did, but I wanted to let you know. Thank you, Mr. Gates. Okay, thank you. Thank you, counsel. Counsel, before we get to the merits of your argument, could you please tell the people in your office to put some toner in the Xerox machine? I think it was really irritating not to be able to read the search warrant affidavit. I apologize, Your Honor. I think this was his, the one that's really bad. Was it him making a good copy of what the government filed? We should have sent you one of the warrant. I just couldn't read it. I don't know what it says. I could barely make it out. I must have gotten one of the first copies. I would have thought you would have the earliest, cleanest, best copy, because usually the police do the drafting with the assistance of prosecutors. As soon as I hit my office, they will get that email. I'm sorry, Your Honor. If you all could cooperate and get us cleaner, clearer copies, it would really help. We will do that. Okay. I apologize. Could you start with your argument in addressing this, the count six argument he makes about the difference in the dates? Sure, Your Honor. I think the only thing I can say, he makes this point about Butler was arrested on the 2nd. How could she aid or abet or possess it on the 23rd? Fair point. The indictment must be wrong, and it says on or about, and either on or about saves it or it's a variance or it's a constructive amendment. He doesn't argue all three. He doesn't argue any of the above. He just says, well, that's just insufficient evidence right there. But there is no doubt that he was on plenty of notice that Butler had 68.5 grams of methamphetamine that he said he got from Lucy Morris after he was tackled. On April 2nd. On April 2nd. On April 2nd. So the date's in error. It's an on or about date. That seems like a pretty minor variance to me because he knows full well what's being charged. He's able to meet that charge in court. And everyone knows what criminal conduct is being charged there. Mr. Wolfe, I have to say I missed this argument in reading the brief. Was this argument even raised to Judge? Not very well. When he came up here and started thundering about it, I had to go to the record because it slipped me. This is 281 of the supplemental excerpts of the record. This is the entirety of Mr. Gent's comments about count six. Your Honor, count six. Morris is charged with possession. She's not charged with delivery. She's charged with possession. All the testimony has been about delivery at some earlier time. Your Honor, the testimony that there is such a variance between the proof and the indictment, that, Your Honor, you should direct a verdict on that count also. That is the sum total of argument on this point in the Rule 29 motion. By the way, just out of curiosity, can you tell me why this count was charged as aiding and abetting the possession instead of as a sale? I hate to say this because it's taped. I have no idea. I mean, when the guy ---- I have no idea. This seems like a convoluted way to go around it. Well, I mean, maybe Butler cooperates better later and they were more confident in his testimony or something. I don't know. But as you pointed out in your question to Mr. Gent, if she gave it to him and got $2,200 for it, she at some point possessed it with an intent to distribute because they've got her on that. Or they could just get her for distribution. I don't know. All right. If ---- I can answer whatever question you have. On the 851, they seem ---- he seems to concede that it's settled by Norbury, and I don't see any reading in Norbury that doesn't show that it's settled. On the search of the home, the rendition of facts from defense is rather extraordinary. But if I could just isolate on one fact. Could you just lay it out for us on the assumption we haven't read it? Sure. Because I, for one, haven't. I couldn't read the search warrant affidavit. Everything I'm about to say is in the search warrant affidavit. Nice to know. Okay? This is when the affidavit ---- The one you can't read. To search the residence? Yes. Okay. Go ahead. Okay. Everything I'm about to say. We get the location where it is, so there's no ---- this is not a case like Hove where, you know, we don't know the location or something like that. We have a precise description of the location, where they want to go. All right. We then have, without any reference to time, a statement that we have two people, I believe their names are Arvila and Fisher, and they have previously purchased meth from Lucy, and they say she has a lot of meth. But in the world of Spinelli, that's not the greatest information because it's not time-specific. You then have an accounting of this confidential informant. Confidential informant knows a person named ---- a woman named Vossler, and Vossler can get methamphetamine, so they start working with her. And in November of 2003, they have essentially two transactions. And the first one, she said ---- and, by the way, she buys some from Vossler initially, but now we're going to go up the food chain. So she meets with Vossler and says, okay, I'm going to go get the product. Vossler then goes to meet with this guy, Wasted Willie. While Vossler's driving and with Wasted Willie, she's being surveilled. Now, Mr. Gent has said, oh, they went all around Billings. Well, no, actually, they were in a little small corner of southeastern Billings that is very near Lucy Morris' home. They lose the surveillance in that area. Then they come back, and Vossler makes a call to the confidential informant and says, we've got it, we'll meet you at a quick way. This whole time with the confidential informant, there's a body wire, and then, of course, the confidential informant is debriefed, and there's mention of Lucy and getting it from Lucy. Then two days later, I believe it's two days later, they do another transaction. This one, she meets up with Wasted Willie, and they go to Morris' home. We'll go to Morris' home. They go up to the door. There's nobody there. They said, okay, we'll go out to Lockwood to her nephew's house because that's where it is. Then Vossler comes back, and Vossler recounts, we got the stuff. From now on, I don't have to go with anybody. I can go see Lucy alone. Lucy has a lot. According to Vossler. According to Vossler. That's sort of the grand total. There's then other contextual information about Lucy Morris' car. What is there in this about the reliability of Vossler? Well, the reliability of Vossler is exactly what Judge Taubman said, that she doesn't just say she can go get drugs and that she knows where to get them. She goes out and gets them. And the person that I focus on when I read that affidavit is Wasted Willie. I mean, you want to talk about whether the police have probable cause to go to Morris' home when Wasted Willie wants to go get methamphetamine, he takes Vossler to Lucy Morris' house. And they surveilled that the second time. That's where Wasted Willie goes when he wants to get methamphetamine. He has probable cause to believe that's a place to go for drugs. And that's just enough right there. And then you add in, in the totality, that two other people said that they got methamphetamine from Morris and that she has a lot. In the totality, under Illinois v. Gates, it's not very close. So your argument would be that even though it might be a little bit shaky that it's Lucy Morris, if we rely solely on Vossler's statements, the fact that Wasted Willie was seen picking up drugs from Lucy's house is more than sufficient to establish probable cause to search the house. Well, let me correct that. Vossler goes with Wasted Willie to get methamphetamine. They go to Morris' house. She's not home, and then they go to another house. But the point I was making is here you have a known part of the drug community in Billings. And this is in the affidavit. Wasted Willie, Dave Weishauer, Dale Weishauer. When he wants meth, he goes to Lucy Morris' house. And they surveil him doing that. And Wasted Willie thinks that's where you go for drugs. Why shouldn't the police and a magistrate think that that's probably right? Now, just Mr. Gent made a big deal about saying where's Lucy, where's Lucy, and she was acquitted on those counts and whatever. Let me just clear up something about that. Vossler was called to testify at trial. And the prosecutor said in the opening, we're going to give you Vossler, but we'll find out whether she's going to cooperate or not. And, you know, Ms. Vossler, 10-year realtor in Billings, just couldn't remember why she made references to Lucy. Just couldn't remember what she might have been talking about and would not confirm that she got it from Lucy Morris. She was not a cooperating witness. She killed those two counts from her fatal lack of memory. And I suppose you can say it's shaky in terms of proof beyond a reasonable doubt. I think that's true. It absolutely is true. But in terms of probable cause, before Vossler had her terrible memory problems, she knew where to go and she knew who had the meth. I'm happy to talk about the search of the car if you have any questions about that. But I think the court cut to it, which is you could flat excise the statements about the field tests and the dog hits enough. So with that, I'll sit down, and I will tell my colleagues that they've got to do a better job on the record. Thank you, counsel. Yes, thank you. We went way over time, but if you want to take one minute for rebuttal, go ahead. I couldn't resist telling the court when you get the affidavit in support of the search warrant, you'll also hear an allegation by Vossler that she, Vossler, in one of these buys ingested psilocybin mushrooms while she was making her observations that the government so forcefully relies upon. And I'll end with that. Thank you. Did she take mushrooms on the day she testified? I have no idea. Thank you, Judge. Looking forward to an injection of toner. Yes. I have a copy here that I underlined a couple things on. If your opponent has no objection, my law clerk can certainly make some copies for us. Thank you. I think we're done. Thank you, counsel. United States v. Morse is submitted, and we're adjourned for the day. Okay. All rise. This court for this session stands adjourned.
judges: Kleinfeld, Tashima, Tallman